THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | :     3:23-CR-083 |
| v. | :     (JUDGE MARIANI) |
| | : |
| SANTINO BELLUCCI, et al., | : |
| | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Defendant, Christopher Potter's, Motion for Severance Pursuant to Federal Rule of Criminal Procedure 14(a) (Doc. 143) is pending before the Court. With the Motion, Defendant Potter requests that the Court sever his trial from that of his co-defendant, Santino Bellucci, pursuant to Rule 14(a) which allows for severance where joinder would prejudice a defendant. Potter identifies several potential sources of prejudice. The primary basis for his request is that, in his statements to law enforcement, Bellucci implicated Potter as a source of the drugs he provided to Corey Rinaldi and the use of the statements at trial would violate the confrontation clause of the Sixth Amendment if Bellucci exercises his right to remain silent at trial and not testify.[1] (Doc. 143 ¶ 6 (citing *Bruton v. United States*, 391

---

[1] Potter further avers that, if "one of the co-defendants testifies at trial but the other does not, counsel for the testifying defendant has the right to comment on the non-testifying defendant's failure to testify which is inconsistent with the co-defendant's privilege against self-incrimination" (Doc. 143 ¶ 9) and "forcing the co-defendants to be tried jointly may prevent Defendant Potter from calling Co-Defendant Bellucci as a witness in his defense[,] . . . [which would violate] Defendant Potter's right to present evidence and testimony in his defense" (*id.* ¶ 10). Discussion of these additional grounds for the requested severance is not warranted because they are not developed in Potter's supporting brief. (*See* Doc. 144.)

U.S. 123, 127-28 (1968)).) Potter asserts that severe prejudice would result if the statements are admitted without the opportunity to cross-examine Potter and the Court will be unable to fashion a limiting instruction that would cure the prejudicial effect. (Doc.143 ¶ 8.)

In its opposition brief, the Government argues that Potter's motion should be denied because the appropriate remedy for his concerns "is sanitization, redaction, and an appropriate limiting instruction to the jury." (Doc. 152 at 7 (citing *Priester v. Vaughn*, 382 F.3d 394, 400-01 (3d Cir. 2004)).) Defendant Bellucci similarly argues that severance should be denied because redaction and an appropriate limiting instruction would eliminate a violation of Potter's Sixth Amendment rights. (Doc. 150 at 2, 8.)

Defendant Potter did not file a reply brief and the time for doing so has passed. Therefore, the pending motion is ripe for disposition. For the reasons that follow, the Court concludes that Defendant's motion will be denied without prejudice.

## II. BACKGROUND[2]

The September 19, 2023, Superseding Indictment charges Santino Bellucci and Christopher Potter with Conspiracy to Distribute Controlled Substances Resulting in Death and Distribution of a Controlled Substance Resulting in Death. (Doc. 89 at 1-3.) The Superseding Indictment also charges Defendant Potter with Distribution of a Controlled

---

[2] Defendant Potter notes that, for purposes of this Motion, the factual allegations made by the Government are accepted as true "solely for a determination relating to severance." (Doc. 144 at 1 n.1.) Therefore, the background information in this section is derived from uncontested factual assertions found generally in the record and specifically in the parties' briefing of the Motion under consideration here.

Substance, Possession with Intent to Distribute Controlled Substance and Maintaining Drug-Involved Premises (*id.* at 4-5), and Defendant Bellucci with Conspiracy to Distribute Controlled Substances (*id.* at 6).[3]

The initial event giving rise to the crimes charged occurred on December 19, 2022, when Corey Rinaldi, a twenty-six-year-old male, was found deceased in his bed in Dunmore, Pennsylvania. (Doc. 112 at 2; Doc. 119 at 3.) Autopsy and toxicology reports indicated that Corey Rinaldi died of a fentanyl overdose. (Doc. 152 at 2.)

The police investigation that followed "determined that a drug conspiracy involving Kaylee Ann Widmer, Santino Bellucci, and Christopher Richard Potter, was the source of the fentanyl sold by Bellucci to Corey Rinaldi on December 18, 2022 resulting in his death." (Doc.152 at 2-3.) After further investigation, law enforcement obtained an arrest warrant for Defendant Bellucci on February 28, 2023. (*Id.* at 3.) On the same date, Bellucci was surveilled on his way to work at the Monroe County Prison where he was employed as a corrections officer. (*Id.* at 3 & n.2.) He was subsequently stopped by members of the Pennsylvania State Police and arrested. (*Id.* at 3-4.)

Although whether he was *Mirandized* before making incriminating statements to law enforcement immediately following his arrest was the subject of Defendant Bellucci's Motion

---

[3] Kaylee Ann Widmer was named as a defendant in the original Indictment filed on April 3, 2023. (Doc. 1.) She is not named in the Superseding Indictment (Doc. 89) because a plea agreement was filed on her behalf prior to the return of the Superseding Indictment. (*See, e.g.*, Doc. 119 at 1 n.1.) Widmer pled guilty on January 19, 2024, and awaits sentencing. (*See* Doc. 138.)

3

to Suppress Defendant's Statements (Doc. 108), the Court denied the motion based on the determination that the Government showed by a preponderance of the evidence that Bellucci was *Mirandized* before he made the statements at issue. (*See* Docs. 157, 158). Thus, Bellucci's incriminating statements made immediately following his arrest and those made during his subsequent audio and video recorded interview are admissible.

Bellucci admitted selling fentanyl to Corey Rinaldi on the day before his death and also admitted to selling him other drugs on previous occasions. (Doc. 152 at 4.) Bellucci specifically admitted that, on December 18, 2022, he obtained fentanyl from his source and sold the fentanyl to Corey. (*Id.*) In the recorded interview that followed, Bellucci identified two individuals as his source for the drugs he sold to Corey. (*Id.* at 5.) These individuals were later identified as Kaylee Ann Widmer and Christopher Richard Potter. (*Id.* at 5 n.3.) Bellucci also admitted that he had other drug customers and sometimes referred them to Widmer and Potter. (*Id.* at 5.)

During his February 28, 2023, interview, Bellucci agreed to cooperate with law enforcement and participate in a controlled buy of fentanyl from Widmer and Potter. (*Id.* at 5-6.) Subsequent to the controlled purchase of a brick of fentanyl (50 bags), Widmer and Potter were arrested and, following the issuance of a search warrant, a search of their residence resulted in the seizure of approximately 5,100 bags of fentanyl along with quantities of Clonazepam, Oxycodone, Vicodin, and a firearm. (*Id.* at 6.)

### III. ANALYSIS

Defendant Potter's request for severance is grounded in his Sixth Amendment Confrontation Clause claim. *See supra* p. 1. While Potter contends that redaction and an appropriate jury instruction will not cure the constitutional violations that would result from a joint trial (Doc. 144 at 6-7), the Government and Defendant Bellucci disagree, *see supra* p. 2. To assess the parties' arguments on this issue, the Court must consider the line of Supreme Court cases addressing the potential prejudice of the admission of a co-defendant's statements, beginning with *Bruton v. United States*, 391 U.S. 123, 127-28 (1968).

In *Bruton v. United States,* 391 U.S. 123 (1968), the Court held that "a defendant is deprived of his rights under the Sixth Amendment's Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 201-02 (1987). In *Richardson,* the Court considered "whether *Bruton* requires the same result when the codefendant's confession is redacted to omit any reference to the defendant, but the defendant is nonetheless linked to the confession by evidence properly admitted against him at trial." *Id.* at 202. In these circumstances, the Court held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a

proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211.

The Court revisited the implications of *Bruton* and *Richardson* in *Gray v. Maryland*, 523 U.S. 185 (1998). The Court noted that the acceptable inferences of the nontestifying defendant's statements in *Richardson* "involved statements that did not refer directly to the defendant himself and which became incriminating 'only when linked with evidence introduced later at trial.'" 523 U.S. at 196 (quoting *Richardson*, 481 U.S. at 208). In contrast, the statements at issue in *Gray* involved

> statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial. Moreover, the redacted confession with the blank prominent on its face, in *Richardson*'s words, "*facially* incriminat[es]" the codefendant. *Id.*, at 209, 107 S.Ct., at 1708 (emphasis added). Like the confession in *Bruton* itself, the accusation that the redacted confession makes "is more vivid than inferential incrimination, and hence more difficult to thrust out of mind." 481 U.S., at 208, 107 S.Ct., at 1707.

*Gray*, 523 U.S. at 196. Based on this distinction, the Court held that when a redaction in the confession at issue "replaces a defendant's name with an obvious indication of deletion, such as a blank space, the word "deleted," or a similar symbol, [it] still falls within *Bruton*'s protective rule." *Id.* at 192.

In *Samia v. United States*, 599 U.S. 635 (2023), the Court again considered the issue of prosecutors seeking to introduce a nontestifying defendant's confession implicating his codefendants. Specifically, the Court addressed

> whether the Confrontation Clause bars the admission of a nontestifying codefendant's confession where (1) the confession has been modified to avoid directly identifying the nonconfessing codefendant and (2) the court offers a limiting instruction that jurors may consider the confession only with respect to the confessing codefendant.

*Id.* at 640. Where three men were tried jointly for a variety of charges including murder-for-hire and conspiracy to commit murder-for-hire and two admitted they had participated in the murder but Adam Samia did not, the Court concluded that the "admission of [a nontestifying defendant's] confession, accompanied by a limiting instruction, did not run afoul of this Court's precedents." *Id.* at 653. After noting that the Court's precedents "distinguish between confessions that directly implicate a defendant and those that do so indirectly," *id.*, at 653, the Court explained that the nontestifying defendant's confession

> was redacted to avoid naming Samia, satisfying *Bruton*'s rule. And, it was not obviously redacted in a manner resembling the confession in *Gray*; the neutral references to some "other person" were not akin to an obvious blank or the word "deleted." In fact, the redacted confession is strikingly similar to a hypothetical modified confession we looked upon favorably in *Gray*, where we posited that, instead of saying "'[m]e, deleted, deleted, and a few other guys,'" the witness could easily have said " '[m]e and a few other guys.' " 523 U.S. at 196, 118 S.Ct. 1151. Accordingly, it "fall[s] outside the narrow exception [*Bruton*] created." *Richardson*, 481 U.S., at 208, 107 S.Ct. 1702.

*Samia*, 599 U.S. at 653. In summation, the Court stated that "[t]he Confrontation Clause ensures that defendants have the opportunity to confront witnesses against them, but it does not provide a freestanding guarantee against the risk of potential prejudice that may arise inferentially in a joint trial." *Id.* at 655.

7

Given the foregoing legal framework, the Court finds it significant that the Government "intends to introduce a redacted version of Bellucci's incriminating admissions and conduct, or law enforcement testimony regarding the same." (Doc. 152 at 12.) Further, the Government also intends "to introduce evidence making the jury aware of the participation of at least one other individual other than Potter or Bellucci who served as a source for the fentanyl that resulted in the death of Corey Rinaldi; thus, the jury will not necessarily know to whom such neutral references specifically refer." (*Id.* at 13.)

As to the Government's latter intention, the Court finds it significant that Potter recognizes the significance of a situation in which the jury is made aware of more than two defendants. Potter's supporting brief states

> [i]n a trial consisting of three (3) or more co-defendants, it is admitted that redaction may be possible as the jury may be incapable of inferring which co-defendant's name is redacted. This isn't the case when a joint trial consists of only two (2) co-defendants as the jury will undoubtedly infer that the co-defendant's statements refer to the only remaining co-defendant.

(Doc. 144 at 7.) While Potter maintains that this case presents the problem of two co-defendants, the Court disagrees. The Government's intention to introduce evidence of a third individual involved in the criminal conduct at issue makes this more akin to a case where there are three or more co-defendants such that, with appropriate redaction, the inference as to Defendant Potter would be unacceptable.

In *United States v. Vega Molina*, 407 F.3d 511, 520 (1st Cir. 2005), the First Circuit reasoned that

> [t]he application of *Bruton, Richardson*, and *Gray* to redacted statements that employ phraseology such as "other individuals" or "another person" requires careful attention to both text and context, that is, to the text of the statement itself and to the context in which it is proffered. The mere fact that the other defendants were on trial for the same crimes to which the declarant confessed is insufficient, in and of itself, to render the use of neutral pronouns an impermissible means of redaction. A particular case may involve numerous events and actors, such that no direct inference plausibly can be made that a neutral phrase like "another person" refers to a specific codefendant. *See, e.g., United States v. Sutton,* 337 F.3d 792, 799–800 (7th Cir.2003). A different case may involve so few defendants that the statement leaves little doubt in the listener's mind about the identity of "another person." *See, e.g., United States v. Vejar–Urias,* 165 F.3d 337, 340 (5th Cir.1999). In short, each case must be subjected to individualized scrutiny.

407 F.3d at 520-21.

Notably, the individualized scrutiny in *Vega Molina* included the court's assessment that the statement's reference to an individual who was not on trial "raised the distinct possibility that people besides those who were on trial may have been involved in the commission of the crimes." *Id.* at 521. Such would be the case here based on the Government's intention to make the jury aware of the participation of at least one individual who is not on trial but "who served as a source for the fentanyl that resulted in the death of Corey Rinaldi." (Doc. 152 at 13.)

Although the Court disagrees with Defendant Potter's assessment that "redaction is not an option to cure the constitutional violations that would result from a joint trial" (Doc. 144 at 7), the Government has not presented a proposed redaction. Therefore, the Court is not in a position to determine if a redaction could cure the potential for unacceptable prejudice. Until the Court is presented with a proposed redacted statement and Defendant

Potter is given an opportunity to express any concerns he may have about it, the Court cannot definitively resolve this issue.

### IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant, Christopher Potter's, Motion for Severance Pursuant to Federal Rule of Criminal Procedure 14(a) (Doc. 143) without prejudice. A separate Order will be entered.

_____
Robert D. Mariani
United States District Judge